UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| CASEY P. OBO Q.F.A., | § | |
| | § | |
| Plaintiff, | § | Case # 1:21-cv-831-DB |
| | § | |
| v. | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Casey P. ("Plaintiff") brings this action on behalf of Q.F.A., a child under the age of eighteen, pursuant to Title XVI of the Social Security Act (the "Act"). Plaintiff seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying Q.F.A.'s application for supplemental security income ("SSI"). *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the case is before the undersigned in accordance with a standing order (*see* ECF No. 8).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 5, 6. Plaintiff also filed a reply. *See* ECF No. 7. For the reasons set forth below, Plaintiff's motion (ECF No. 5) is **DENIED**, and the Commissioner's motion (ECF No. 6) is **GRANTED**.

## <u>BACKGROUND</u>

On November 28, 2017, Plaintiff protectively filed an application for SSI child's benefits on behalf of her minor son, Q.F.A., alleging disability beginning October 6, 2015, due to asthma, breathing problems, and constipation. Transcript ("Tr.") 23, 168-74, 186. The application was initially denied on April 13, 2018, after which Plaintiff requested a hearing. Tr. 23. On February 3, 2020, Administrative Law Judge Mark Naggi ("the ALJ") conducted a hearing in Buffalo, New

York. Tr. 23.  Plaintiff and Q.F.A. appeared and testified at the hearing and were represented by

Kenneth R. Hiller, an attorney. 23, 41-67. Donald N. Mangravite, M.D., M.P.H. ("Dr.

Mangravite"), an impartial medical expert, also appeared and testified. Tr. 23.

The ALJ issued an unfavorable decision on April 27, 2020, finding that Q.F.A. was not

disabled. Tr. 23-36. On June 10, 2021, the Appeals Council denied Plaintiff's request for further

review. Tr. 1-6. The ALJ's April 27, 2020 decision thus became the "final decision" of the

Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the

SSA's conclusions were supported by substantial evidence in the record and were based on a

correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C.  §

405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive"

if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations

omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."

*Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.    The Sequential Evaluation Process

Individuals under eighteen years old are considered disabled when the individual "has a

medically determinable physical or mental impairment, which results in marked and severe

functional limitations, and which can be expected to result in death, or which has lasted or can be

expected to last for a continuous period of not less than twelve months." 42 U.S.C. §

1382c(a)(3)(C)(i). In evaluating disability claims in children, the Commissioner is required to use the three-step process promulgated in 20 C.F.R. § 416.924. The first step requires the ALJ to determine whether the child is engaged in "substantial gainful activity." *See* 20 C.F.R. § 416.924(a). The second step requires the ALJ to determine whether the child has any severe impairments, defined as anything that causes "more than minimal functional limitations." *Id*. Finally, the ALJ determines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of a listed impairment. *Id*. If the ALJ finds that the child's impairment or combination of impairments meets or equals a listing, the child is then considered disabled. 20 C.F.R. §§ 416.924(d)(1).

In determining whether the child's impairment or combination of impairments meets or medically equals a listing, the ALJ must assess the child's functioning in six domains:

    1. Acquiring and using information.

    2. Attending and completing tasks.

    3. Interacting and relating with others.

    4. Moving about and manipulating objects.

    5. Caring for yourself; and

    6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). The child is classified as disabled if the child has a "marked" limitation in any two domains of functioning or an "extreme" limitation in any one domain. 20 C.F.R. §§ 416.926a(d). A "marked" limitation exists when the impairment or cumulative effect of the impairments "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is an impairment which "interferes very seriously" with the child's ability to independently initiate, sustain, or

complete activities. 20 C.F.R. § 416.926a(e)(3)(i). If the child has an impairment that meets, and

medically or functionally equals the listings, and the impairment meets the Act's duration

requirement, the ALJ will find the child disabled. 20 C.F.R. § 416.924(d).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Q.F.A.'s claim for benefits under the process described above and made

the following findings in his April 27, 2020, decision:

1. The claimant was born on November 19, 2012. Therefore, he was a preschooler on November 28, 2017, the date application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since November 28, 2017, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: chronic constipation and asthma (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6. The claimant has not been disabled, as defined in the Social Security Act, since November 28, 2017, the date the application was filed (20 CFR 416.924(a))..

Tr. 23-35.

Accordingly, the ALJ determined that, for the application for SSI protectively filed on

November 28, 2017, Q.F.A. is not disabled under section 1614(a)(3)(C) of the Social Security Act.

Tr. 36.

## ANALYSIS

Plaintiff asserts a single point of error. Plaintiff argues that the ALJ did not properly

consider the opinion of medical expert Dr. Mangravite. *See* ECF No. 5-1 at 8-11. Plaintiff contends

that Dr. Mangravite's hearing testimony established that Q.F.A. had an extreme limitation in the

functional domain of health and physical well-being, and therefore, Q.F.A. should have been found disabled. *See id.* at 9.

The Commissioner argues in response that substantial evidence, including Dr. Mangravite's opinion and other medical opinion evidence, the objective medical evidence, Q.F.A.'s school records, the subjective reports regarding Q.F.A.'s symptoms, and the statements on Q.F.A.'s functioning, supports the ALJ's finding that Q.F.A. had a marked limitation in the domain of health and physical well-being. *See* ECF No. 6-1 at 9-24. Further, argues the Commissioner, Plaintiff's assertion that Dr. Mangravite's testimony supports an extreme limitation in the domain of health and physical well-being is a mischaracterization of the doctor's testimony. *See id.* at 9-17.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record and the ALJ's decision, the Court finds that the ALJ properly determined that Q.F.A. had no limitations in interacting and relating with others, moving about and manipulating objects, and the ability to care for himself; less than marked limitations in the domains of acquiring and using information and attending and completing tasks; and a marked limitation in health and physical well-being.[1]  Tr. 25-35. The ALJ thoroughly considered all the

---

[1] Because Plaintiff's sole point of error is a challenge to the ALJ's finding in the domain of health and physical well-being (*see generally* ECF No. 5-1), the Court will only briefly discuss the remaining functional domains in this opinion. Furthermore, Plaintiff has waived any arguments challenging the ALJ's findings in the other five domains.

evidence in the record, including the medical opinions and other objective medical evidence, Q.F.A.'s school records, and statements regarding Q.F.A.'s symptoms and functioning, and his finding that Q.F.A. did not have an extreme limitation in the domain of health and physical well-being was supported by substantial evidence. *Id.*

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Q.F.A.'s application was filed on November 28, 2017, and therefore, the 2017 regulations are applicable to his claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings.  The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id.* The source of the opinion is not the most important factor

---

*Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal); *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Rather, the ALJ focuses on the persuasiveness of the medical opinion(s) or prior administrative medical finding(s) using the following five factors: (1) Supportability; (2) Consistency; (3) Relationship with the claimant (which includes: (i) Length of the treatment relationship; (ii) Frequency of examinations; (iii) Purpose of the treatment relationship; (iv) Extent of the treatment relationship; and (v) Examining relationship); (4) Specialization; and (5) Other factors. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). When articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

When assessing a child's ability in each of the six domains, an ALJ considers evidence from all settings, including school records such as grades and aptitude and achievement test scores, evidence from medical and non-medical sources, and evidence from the child himself, in order to take into account "the whole child." *See* Social Security Ruling ("SSR") 09-1p, 2009 WL 396031; 09-3p, 2009 WL 396025, at *5 (when assessing a child's ability in each of the six domains, an ALJ considers evidence from all settings, including school records such as grades and aptitude and achievement test scores, evidence from medical and non-medical sources, and evidence from the child themselves). Further, it is Plaintiff's burden to submit evidence to corroborate her allegations and to demonstrate disability. *See* 20 C.F.R. § 416.912(a); *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). Here, the ALJ followed these procedures and conducted a thorough discussion of the

evidence to find that, despite his impairments, Q.F.A. did not satisfy the criteria for functional equivalence to a Listing. Tr. 35.

In support of his determination, the ALJ considered questionnaires completed by Q.F.A.'s kindergarten teacher in January 2018 and March 2018, which indicated no more than slight limitations in any domain. Tr. 29, 206-14, 217-14. In January 2018, Q.F.A.'s kindergarten teacher indicated that Q.F.A. was not on an Individualized Education Plain ("IEP"), did not have an unusual degree of absenteeism, and was independent in attending and completing tasks despite working a little slower at times. Tr. 29, 206-09. The teacher assessed no more than slight limitations in all domains, except in the domain of moving and manipulating objects where QFA had no limitations. Tr. 29,208-13.

An updated questionnaire in March 2018 revealed similar findings. Tr. 217-24. As the ALJ observed, this questionnaire indicated that Q.F.A. did not regularly miss school due to illness and did not have any problems in acquiring and using information or in moving about and manipulating objects. Tr. 29, 217-23. The teacher also assessed no limitations in caring for himself other than a slight limitation in knowing when to ask for help, and no more than slight limitations in attending and completing tasks, or in interacting with others. Tr. 29, 218-23. The ALJ also observed that a treatment record from May 2018 indicated that Q.F.A. was performing well in school (Tr. 533), and his kindergarten report card indicated that he was a pleasure to have in class; worked well with others; and he was meeting, exceeding, or approaching standards in all subjects and areas (Tr. 262-63). Tr. 34.

The ALJ also noted that Q.F.A. was promoted to first grade, which he began in September 2018. Tr. 34, 260-61. On September 13, 2018, Plaintiff reported that Q.F.A. was doing well in first grade and meeting all his milestones; he had many friends; and he sang in a choir. Tr. 34, 804. In

January 2019, Plaintiff again indicated to providers that Q.F.A. continued to meet all his milestones at school and was participating in sports; he could read and write; he had many friends; and he was doing "very well" in school despite his absences due to hospitalizations. Tr. 34, 706-07. The ALJ also observed that while Q.F.A.'s second grade report card indicated 21 unexcused absences in the fall 2019 marking period (Tr, 258-59), the medical record showed only one visit for medical treatment during that time period, when on November 26, 2019, Q.F.A. presented to the emergency department ("ED") complaining of acute constipation and was subsequently discharged home in stable condition, Tr. 34, 925-28.

The ALJ also considered the prior administrative medical findings of state agency medical consultant C. Nohejl, M.D. ("Dr. Nohejl"). Tr. 35. Dr. Nohejl reviewed the available record evidence as of April 12, 2018, and assessed that Q.F.A. had less than marked limitations in interacting and relating with others and in health and physical well-being and had no limitations in acquiring and using information, attending and completing tasks, moving about and manipulating objects, and caring for himself. Tr. 74-76. The ALJ considered that Dr. Nohejl based his findings upon a thorough review of the available medical records and a comprehensive understanding of the agency rules and regulations. Tr. 35; 20 C.F.R. § 416.913a(b)(1) (State agency medical consultants are highly qualified and experts in Social Security disability evaluation); 20 C.F.R. § 416.920c(c)(5) (in evaluating prior administrative medical findings, an ALJ will consider how familiar a source is with other evidence in the claim).

The ALJ also found Dr. Nohejl's findings internally consistent and well supported by reasonable explanation. Tr. 35; 20 C.F.R. § 416.920c(c)(1) (the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his assessment, the more persuasive the prior administrative medical findings will be). Ultimately,

however, the ALJ found Dr. Nohejl's findings "not entirely persuasive" as Dr. Nohejl did not have the opportunity to review the evidence submitted through the date of the hearing (Tr. 484-946), or to see and hear Plaintiff's or Q.F.A.'s testimony. Tr. 35.

Finally, and most notably, the ALJ considered the testimony of Dr. Mangravite and found it "persuasive." Tr. 34. Dr. Mangravite had an opportunity to review all the evidence submitted through the date of the February 3, 2020, hearing and had the opportunity to hear Plaintiff's and Q.F.A.'s testimony. Tr. 34, 60-66. Dr. Mangravite testified that Q.F.A. had less than marked limitations in the domains of acquiring and using information and in attending and completing tasks; no limitations in the domains of interacting with others, moving about and manipulating objects, and caring for himself; and a marked limitation in the domain of health and physical well-being. Tr. 34, 60-63.

In evaluating Dr. Mangravite's opinion, the ALJ appropriately considered the two most important factors, supportability and consistency. Tr. 34-35; 20 C.F.R. § 416.920c(b)(2) (indicating that the factors of supportability and consistency are the most important factors an ALJ considers in determining the persuasiveness of an opinion). The ALJ noted that Dr. Mangravite supported his opinion with reasonable explanations and citations to the record and that the doctor's opinion was consistent with the record. Tr. 34-35. *See* 20 C.F.R. §§ 416.920c(c)(1) (the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his medical opinion, the more persuasive the medical opinion will be), 416.920c(c)(2) (the more consistent a medical opinion is with the other evidence in the record, the more persuasive the medical opinion will be).

In finding Q.F.A. to be markedly limited in the domain of health and physical well-being, Dr. Mangravite noted that the record documented many emergency room visits and

hospitalizations for constipation Tr. 35, 60-63. Dr. Mangravite also observed that Q.F.A. had a number of absences from school, noting that in the 2018-19 school year (first grade), Q.F.A. had 72 unexcused absences (Tr. 260) and in the 2019 fall semester of second grade, he had 21 unexcused absences (Tr. 258). Tr. 35, 57-58, 63. Dr. Mangravite also specifically questioned Plaintiff at the hearing regarding Q.F.A.'s absences. Tr. 57-58. Plaintiff testified that she was unaware why the absences were marked as unexcused because the school was aware that Q.F.A. was absent for treatment. Tr. 58. Plaintiff also testified that after Q.F.A.'s colostomy in February 2019, he was out for a long period of time "because he didn't feel comfortable going to school with his colostomy bag." Tr. 58.

Dr. Mangravite considered Plaintiff's testimony and Q.F.A.'s absences in opining that Q.F.A.'s limitation in the domain of health and physical well-being did not rise to an extreme limitation. As Dr. Mangravite explained, although Q.F.A. was not able to attend school right after the colostomy, "it seems as though now he is able to go to school. [] So, that is why I would rate that as a marked as opposed to extreme, health and physical well-being." Tr. 63. As the ALJ explained, Dr. Mangravite noted that, while Q.F.A. had absences from school, an extreme limitation in this domain would entail greater limitations, such as a complete inability to attend school. Tr. 35, 63. The ALJ also noted that Dr. Mangravite's testimony was consistent with the record, including that Q.F.A. had been able to participate in school without special education services, and there were no notes of any significant problems from Q.F.A.'s teachers. Tr. 35, 58, 206-14, 217-24. *See* 20 C.F.R. § 416.920c(c)(1).

The ALJ also noted that, despite Q.F.A.'s extensive treatment for chronic constipation during the relevant period, he engaged in a range of age-appropriate activities of daily living which did not support allegations of disabling symptoms and limitations. Tr. 35. For example, Q.F.A.

testified that he got along with his teachers and other children at school; he had a best friend; and he played with others. Tr. 26, 47-48. He also testified that he played basketball after school and liked to play baseball and football. Tr. 26-27, 48-50. Q.F.A. also testified that he used the internet and enjoyed playing video games, especially Fortnite. Tr. 27, 49. Furthermore, as noted above, in September 2018, Plaintiff reported that Q.F.A. had recently started the first grade; was meeting all his milestones; had many friends; and sang in a choir. Tr. 31, 804. Plaintiff also testified that Q.F.A. was very active in his church choir, going every Friday since he was about two or three years old. Tr. 53. Plaintiff further testified that QFA got along well in school and at home. Tr. 53.

In finding Dr. Mangravite's opinion persuasive, the ALJ also noted that Dr. Mangravite is board-certified in pediatrics and has practiced as a pediatrician for a significant number of years, and he has knowledge of the Social Security disability program.  Tr. 34, 916. The ALJ also noted that Dr. Mangravite's opinion was based on his review of all the evidence submitted through the date of the February 3, 2020, hearing; that he supported his opinion with adequate explanation and citation to the record; and his opinion was consistent with the record as a whole. Tr. 34, 59-60, 916.

Based on all the foregoing, the ALJ reasonably found Dr. Mangravite's opinion persuasive. Tr. 34. The opinions of Drs. Nohejl and Mangravite, along with the overall record evidence, provide substantial support for the ALJ's finding that Q.F.A. was not disabled. Tr. 35; see 20 C.F.R. §416.913a(b)(1); *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (assessments by state agency medical consultants may constitute substantial evidence); *see also Brenda H. v. Comm'r of Soc. Sec.*, No. 20-CV-01025, 2022 WL 125820, at *5 (W.D.N.Y. Jan. 13, 2022) ("The opinion of a medical expert may constitute substantial evidence in support of an ALJ's decision.") (citing *Heagney-O'Hara v. Commissioner*, 646 F. App'x 123, 126 (2d Cir. 2016); *Botta v. Colvin*, 669 F.

App 'x 583, 584 (2d Cir. 2016) (ALJ properly relied on a medical expert testimony in assessing claimant's functioning)). Furthermore, no opinion in the record supports a finding that Q.F.A. had marked impairments in two domains or an extreme limitation in one domain.

As previously noted, Plaintiff's sole point of error is that the ALJ erred in evaluating Dr. Mangravite's opinion. *See* ECF No. 5-1 at 8-11. According to Plaintiff, Dr. Mangravite's testimony establishes that Q.F.A. had an extreme limitation in the domain of health and physical well-being. *See id*. The domain of health and physical well-being considers the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects (20 CFR 416.929a(1)).

Social Security regulation 20 CFR 416.926a(l)(3) sets forth some examples of limited functioning in this domain that children of any age might have; however, the examples do not necessarily describe marked or extreme limitation in the domain. Some examples of difficulty children could have involving their health and physical well-being are: (i) generalized symptoms, such as weakness, dizziness, agitation (e.g., excitability), lethargy (e.g., fatigue or loss of energy or stamina), or psychomotor retardation because of any impairment(s); (ii) somatic complaints related to an impairment (e.g., seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches or insomnia); (iii) limitations in physical functioning because of treatment (e.g., chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments); (iv) exacerbations from an impairment(s) that interfere with physical functioning; or (v) medical fragility requiring intensive medical care to maintain level of health and physical well-being.

Plaintiff alleges that Dr. Mangravite testified that Q.F.A. had a very serious interruption in the domain of health and physical well-being. *See id*. at 9. However, that is a misrepresentation of Dr. Mangravite's testimony. Plaintiff's attorney posed the following hypothetical to Dr. Mangravite:

> Q: [] So, if we have a child who [is] missing 72 days of school. I mean, that is a very serious interruption of their ability to maintain attendance in school. Would that be a fair statement?

To which, Dr. Mangravite replied:

> A: Well, I think that is a fair statement. Yes.

Tr. 65-66.

Thus, Dr.  Mangravite merely conceded that missing 72 days of school could be a very serious interruption in that child's *ability to maintain attendance in school. Id*. He did ***not*** testify that such equated to a very serious interruption in the domain of health and physical well-being as Plaintiff argues. Plaintiff fails to cite to any authority to support her assertion that a very serious interruption in the ability to maintain attendance in school equates to an extreme limitation in the domain of health and physical well-being or is inconsistent with Dr. Mangravite's opinion that Q.F.A. was only markedly limited in this domain.

As previously noted, the record here indicates a level of overall functioning that, despite the absences, did not rise to an extreme limitation, including that Q.F.A. had been able to participate in school without special education services and there were no notes of any significant problems from Q.F.A.'s teachers. Tr. 35, 58, 206-14, 217-24. *See e.g., Green o/b/o D.D. v. Colvin*, No. 3:17-CV-78 (MPS), 2018 WL 323944, at *7 (D. Conn. Jan. 8, 2018) (in finding the claimant to have a less than marked limitation in the domain of health and physical well-being, the court considered the claimant's positive school performance despite missing "lots of school due to chronic illness"); *Burgos, o/b/o Morales v. Shalala*, No. 94 CIV. 3412(LLS), 1995 WL 675491, at

*3 (S.D.N.Y. Nov. 14, 1995) (upholding the ALJ's assessment of a child's functioning and noting that despite absences from school, there was no evidence that the claimant's cognitive ability or performance in school suffered as a result); *see also Quanshana R. o/b/o J.R.T.D. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1138 (DJS), 2022 WL 475596, at *9 (N.D.N.Y. Feb. 16, 2022) ("[T]he number of Plaintiff's doctor visits, without more, does not establish that Plaintiff has an extreme limitation in the domain of health and physical well-being.").

While Plaintiff argues that Q.F.A.'s unexcused absences were a result of his symptoms (*see* ECF No. 5-1 at 10), Plaintiff also testified that Q.F.A was out for a long period of time after his February 2019 colostomy "because he didn't feel comfortable going to school with his colostomy bag." Tr. 58. And although Plaintiff points to the fact that Q.F.A. was hospitalized seven times during the relevant period (*see* ECF No. 5-1 at 10), the ALJ not only considered these hospitalizations (which totaled 25 days throughout the relevant period), he also considered that those same hospital records revealed that Q.F.A. failed to follow up with appropriate specialists and "received his medications for chronic constipation inconsistently at times." Tr. 33, 413, 531, 601, 620, 749, 871, 923. *See Walker v. Berryhill*, No. 6:17-CV-06138 (MAT), 2017 WL 6492520, at *3 (W.D.N.Y. Dec. 19, 2017) ("An ALJ may properly take into account a history of noncompliance with medication or treatment recommendations in assessing credibility."); *Diaz-Sanchez v. Berryhill*, 295 F.Supp.3d 302, 306 (W.D.N.Y. 2018) (plaintiff's failure to seek treatment for an alleged impairment suggests that the associated symptoms and limitations were not serious).

Additionally, as the ALJ discussed, Dr. Mangravite's opinion explicitly considered that Q.F.A. had a "number of absences from school" and reasonably explained why this and other evidence supported a marked limitation in health and physical well-being, rather than an extreme limitation. Tr. 34-35, 58, 63. Dr. Mangravite testified that Q.F.A. "ha[d] been missing a whole lot

of school. So, that is why I would rate that as marked as opposed to extreme . . . ." Tr. 63. Thus, there is no conflict between Dr. Mangravite's opinion and his testimony in response to later questioning by Plaintiff's attorney, and the ALJ was not required to recontact or further question Dr. Mangravite as Plaintiff argues. *See* ECF No. 5-1 at 9. Even assuming, *arguendo*, that there was some conflict, it was the ALJ's sole responsibility to evaluate the medical evidence and resolve any material conflicts in the record, and in this case, after weighing all the evidence, the ALJ reasonably found Q.F.A. to have only a marked limitation in the domain of health and physical well-being. *See Micheli v. Astrue*, 501 F. App'x 26, 29-30 (2d Cir. 2012); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

Furthermore, the ALJ was not required to expressly consider and analyze each piece of evidence. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *see also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (ALJ not required to reconcile every shred of evidence); *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-13 (2d. Cir. 2010) (holding that there is no need to remand for clarification if this is not a case "in which we would be unable to fathom the ALJ's rationale in relation to evidence in the record"). Rather, the ALJ must adequately explain his conclusions, sufficient for the court to determine that the ALJ's decision was based on substantial evidence. *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("Substantial evidence is . . . a very deferential standard of review— even more so than the 'clearly erroneous' standard.").

Here, the ALJ clearly pointed to the evidence that supported his conclusion regarding the persuasiveness of Dr. Mangravite's opinion; discussed potentially contradictory evidence (such as Q.F.A.'s number of absences from school); and explained how such evidence was accounted for

in the ALJ's finding of a marked limitation in this domain. Tr. 34-35. An ALJ is entitled to consider and weigh the entirety of the nonmedical and medical evidence, and to credit evidence of the claimant's functioning over other evidence that may suggest more significant limitations in a domain. *See Miller v. Comm'r of Soc. Sec.*, 409 F. App'x 384, 388 (2d Cir. 2010). The evidence of record in this case substantially supports the ALJ's finding that that Q.F.A. had a marked limitation in the domain of health and physical well-being. *See Lowry v. Astrue*, 474 F. App'x 801, 805 (2d Cir. 2012) (rejecting plaintiff's contention that ALJ failed to meaningfully explain his reasons for not crediting certain evidence in finding that child's impairments did not functionally equal listings).

Although Plaintiff disagrees with the ALJ's finding and tries to argue that the ALJ should have reached a different conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do. *See Brault*, 683 F.3d at 448 (It is not enough for the plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. The plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record).

As noted above, the substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal

citations omitted). As previously noted, the question is not whether there is evidence to support disability; it is whether there is "more than a scintilla" of evidence supporting the ALJ's decision. *Moran v*, 569 F.3d at 112. As explained above, there is such evidence here. Accordingly, the Court finds no error in the ALJ's determination that Q.F.A. is not disabled.

<u>**CONCLUSION**</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 5) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 6) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.


DON D. BUSH
UNITED STATES MAGISTRATE JUDGE

19